On application for rehearing Winn-Dixie urges that this Court erroneously determined that there was sufficient evidence to support an award of punitive damages. In our opinion the following statement was made, "Mr. Lee testified for the firsttime at the third trial concerning prior similar conduct of Winn-Dixie in order to show fraud, scheme, motive or intent." (Emphasis added.) In the application for rehearing Winn-Dixie urges that this is an incorrect statement, since Mr. Lee testified at the first trial of this case, although he did not testify at the second trial. Moreover, Winn-Dixie urges that this Court erroneously based the determination that sufficient evidence was presented to award punitive damages on this erroneous belief that Mr. Lee was a new witness.
In the second appeal of this case Mr. Justice Bloodworth, speaking for this Court, said: *Page 479 
 [O]n the first appeal, there was not a scintilla of evidence to support an award of punitive damages. Unless something new was presented at the second trial, our holding on the present appeal must be the same.
Thus, the sole issue before us is whether new evidence was presented in the third trial which was not presented in the past two trials. It does not matter whether Mr. Lee was, in fact, a new witness. The only question is whether new evidence was presented at the third trial.
In an excess of caution we have reviewed the records of the three trials of this case in order to determine if the testimony of Mr. Lee in the third trial, which was relevant to the issue of fraud and the allowing of punitive damages, exceeded or went beyond that in the first trial.
In the first trial the following transpired:
Q. Was your termination voluntary?
A. Yes, sir.
Q. What brought it on?
 A. I started over in Dothan as a stock clerk. I worked my way up to produce manager, assistant manager, and then in 1964, they transferred me to Enterprise as store manager of this store. I was manager until 1972, about January, and they had been planning on building a new store, and I had been told by my supervisor before that time, that he was going to transfer me back to Dothan, and as manager of the old store, and the first day of January or thereabouts, a day or two, he came in and told me that they had — was going to transfer me to the Dothan store, but I wouldn't be store manager. I would just be assistant manager, and it would cut my pay approximately $42.00 per week plus me having to drive back and forth every day to work.
Q. All right. And you quit?
 A. Yes, sir. I didn't quit that day, I worked approximately 7 weeks before I quit.
 Q. After you quit, did you make application for your profit-sharing funds?
The remainder of his testimony concerned the profit-sharing plan of Winn-Dixie. After reviewing the record, we find that the purpose of his testimony at the first trial was to show that when Mr. Lee voluntarily terminated his employment, he received payments under Winn-Dixie's profit-sharing plan.
In the third trial, however, counsel for the plaintiff outlined the purpose of Mr. Lee's testimony by stating:
 MR. MARSH: Judge, we expect to show prior similar conduct of the defendant which would be admissible evidence of other fraudulent transactions or deceit by the defendant. We feel it admissible to show fraud, motive, scheme, or intent.
There Mr. Lee's testimony went into detail regarding the duties of supervisors, especially as pertained to arranging transfers for employees, and the exact misrepresentations which were made to Mr. Lee by his supervisor. The inferences which a jury could have made from his testimony there were entirely different from those which would have been made after his testimony in the first trial. Certainly counsel for Winn-Dixie must have believed his testimony was admitted for a new purpose and was substantially different, since he urged in brief that the testimony of Mr. Lee in the third trial placed an "undue burden of surprise and prejudice on Winn-Dixie."
After our careful review of the records we find that although this was not the first time Mr. Lee testified, it was the first time his testimony was used to show fraud, scheme, motive or intent on Winn-Dixie's part. Much of his testimony was new evidence, which coupled with the other evidence elicited at trial, comprised more than a sufficient amount to support an award of punitive damages.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
FAULKNER, JONES, ALMON, SHORES and EMBRY, JJ., concur. *Page 480 
TORBERT, C.J., and MADDOX, J., dissent.
ADAMS, J., not sitting.